THE WHITE STAR BUS LINE, INC., peticionaria y apelante, *v.* LA COMISIÓN DE INDEMNIZACIONES A OBREROS DE PUERTO RICO, compuesta de Ramón Montaner, R. Palacios Rodríguez, Joaquín A. Becerril, Alfredo Vargas, P. Rivera Martínez y Pedro Santana, Jr., demandada y apelada.

No. 4126.—*Visto:* Marzo 29, 1927. *Resuelto:* Abril 7, 1927.

1. SOCIEDAD—LA RELACIÓN—CREACIÓN Y REQUISITOS—PARTICIPACIÓN EN LAS GANANCIAS COMO COMPENSACIÓN POR SERVICIOS.—El mero hecho de que se paguen salarios en forma de comisión o de tanto por ciento no es concluyente de la existencia de una sociedad.

2. Sociedad—La Relación—Creación y Requisitos—Según la Intención de las Partes.—Atendido el contrato de que se trata en el caso de autos, *se resolvió:* que el mismo no tiene ninguno de los elementos esenciales del contrato de sociedad y que, en sus aspectos más substanciales, tiene indicios fehacientes de una intención de crear la relación de patrono y empleado.

Sentencia de *Miguel A. Muñoz,* J. (San Juan), declarando sin lugar la petición de *certiorari. Confirmada.*

*Salvador Mestre,* abogado de la apelante; *Hon. Attorney General George C. Butte,* y *C. Llauger Díaz* y *Emilio Aldrey,* Primer Attorney General auxiliar y Sub-Attorney General, respectivamente, abogados de la apelada.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

La apelante es una corporación que se dedica a explotar una línea de vehículos de motor para el transporte de pasajeros. Al informar a la Comisión de Indemnizaciones a Obreros los salarios pagados por la apelante a sus empleados durante determinado período de tiempo anterior a la fecha de dicho informe, se excluyeron las cantidades pagadas a los *chauffeurs* que manejaban los vehículos dedicados a tal negocio, fundándose en que los *chauffeurs* en cuestión, de acuerdo con los términos del contrato escrito en que ellos habían entrado con la apelante, no eran empleados de ella sino socios en el negocio.

La decisión de la Comisión y la resolución de la corte de distrito al ser llevada tal decisión por *certiorari* para ser revisada, fueron adversas a la teoría de la apelante.

El alegato de la apelante se basa principalmente en el caso de *Colón* v. *Comisión de Indemnizaciones a Obreros,* 34 D.P.R. 99.

Según se desprende claramente de la opinión de la corte, el caso de Colón fué un caso dudoso. La corte inferior había aceptado como cierta la declaración de uno de los socios, tendente a demostrar la existencia de la sociedad. La única cuestión envuelta era si esta declaración era o no suficiente para sostener la sentencia. Después de un cuida-

doso análisis de los hechos, según fueron relatados por el citado testigo, la corte no halló razones adecuadas para variar la conclusión a que llegaron, primero la Comisión de Indemnizaciones a Obreros, y luego la corte de distrito.

Colón y Teissonier, el testigo antes mencionado, constituyeron una sociedad para la fabricación y venta de petardos. Instalaron la fábrica bajo un techo de zinc sostenido por cuatro postes. La proposición hecha por Teissonier a Colón, aceptada por este último, fué la siguiente:

". . . . yo voy a poner la fábrica allá ahora, si quieres venir conmigo yo te asocio conmigo, te doy un tanto por ciento y te doy dos pesos diarios."

Que Colón participó en la dirección del negocio y que las ganancias ya mencionadas fueron ganancias líquidas, queda demostrado por el siguiente extracto:

"Allá por el 3 de diciembre de 1923, Arturo Colón trabajaba en unión suya como socio de un negocio de fabricación de petardos. Colón nada aportó a la sociedad. El testigo aportó los materiales y sostiene que Colón era un socio porque él lo asoció dándole un quince por ciento de los beneficios. Tenía la fábrica en los terrenos de Menescau y él vendía los petardos. Cuando estaba en la fábrica, mandaba 'a todo el mundo: si dejaba a Arturo Colón, entonces mandaba Arturo Colón.' En la fábrica había dos operarios. Después de vendidos los petardos, sacaba los gastos y del beneficio daba el quince por ciento a Colón."

Tanto Colón como Teissonier trabajaron para levantar el techo bajo el cual iba a efectuarse el negocio, y trabajaron conjuntamente en la pequeña fábrica. La explosión que causó la muerte de Colón voló la mesa en que Teissonier acostumbraba trabajar.

La opinión concluye en parte como sigue:

"El caso concreto que estudiamos es de clasificación difícil. Nada consta por escrito. Sólo podemos penetrar en la intención de las partes por las manifestaciones de una de ellas. La circunstancia de haberse fijado un salario a Colón, la condición predominante de

Teissonier en la dirección del negocio, en la venta de los petardos y en la liquidación final, parecen presentar un caso de locación de servicios. Por otro lado la pequeñez del negocio gráficamente mostrada por el local donde se fabricaban los petardos, la invitación de Teissonier a Colón y la aceptación de éste, tales como Teissonier las describe, y el trabajo de Teissonier y Colón juntos en el mismo local, si bien presentan a Teissonier como hombre de mayores recursos e iniciativas que Colón y como el verdadero director de la empresa, no excluyen la idea de la sociedad en la cual Teissonier puso bienes y trabajo y Colón trabajo solamente recibiendo una cantidad diaria en atención a su pobreza. Generalmente al constituirse las sociedades, fíjase a los socios que activamente trabajan un sueldo y y no por ello pierden los que lo reciben su condición de socios.

"Bajo tales circunstancias, habiendo llegado la comisión primero y la corte de distrito después a la conclusión de la existencia de una sociedad, no nos sentimos inclinados a variar sus juicios en ausencia de una demostración cumplida de que son erróneos."

En el presente caso no estamos ante la declaración verbal de un socio superviviente, aceptada como cierta primero por la Comisión y después por la corte de distrito y sostenida por ambas como que establece la existencia de una sociedad. En este caso tenemos un contrato escrito, otorgado expresamente por la White Star Bus Line, Inc., y en el cual ésta descansaba para definir las condiciones y la naturaleza del convenio existente entre ella y los *chauffeurs* de sus vehículos de motor. Este documento ha sido interpretado primero por la Comisión de Indemnizaciones a Obreros y luego por la corte de distrito como que es un arrendamiento de servicios y no un contrato de sociedad.

El documento en cuestión no está titulado contrato de sociedad, ni así consignado en ningún sitio en el documento mismo. No se hace mención alguna ni de socios ni de sociedad. La copia que contienen los autos que tenemos a la vista dice así:

"De una parte: La White Star Bus Line, Inc., que es una corporación constituída bajo las leyes de Puerto Rico, representada por su Presidente, Adolfo Valdés.

"Y DE LA OTRA: Ventura Martínez Díaz, mayor de edad, chauffeur y vecino de San Juan.

"Hacen constar por el presente contrato lo siguiente:

"PRIMERO: La White Star Bus Line, Inc., compareciente de la primera parte, explota un servicio de auto-busses entre San Juan, Río Piedras, Martín Peña y el Parque, al que tiene dedicado un número de auto-guaguas.

"SEGUNDO: El compareciente de la segunda parte está autorizado para ejercer como chauffeur en la Isla de Puerto Rico de acuerdo con la licencia y placa número 895.

"TERCERO: Que el compareciente de la segunda parte conviene en hacerse cargo del manejo de uno de los vehículos de motor de la White Star Bus Line (que será determinado por la citada compañía) operándolo durante las horas del día o de la noche que determine la Compañía y se compromete a ejercitar el mayor cuidado y celo en el manejo de dicho vehículo y a cumplir con las disposiciones y órdenes que reciba de la otra compareciente la White Star Bus Line Co.

"CUARTO: La compañía compareciente se compromete por su parte a deducir y entregar de los beneficios obtenidos por la guagua que opere el otro compareciente durante las horas que ha sido manejada por él, el veinte por ciento (20%) de las entradas brutas que corresponderán al compareciente de la segunda parte por sus gestiones y trabajo en el manejo de dicho vehículo y cuyo pago se hará al terminar el turno cada día.

"QUINTO: Este contrato no tiene tiempo determinado y será resuelto, extinguido y terminado por cualquiera de las partes en cualquier momento en que lo crea oportuno sin derecho a indemnización para ninguna de las partes por motivo de dicha resolución.

"SEXTO: El compareciente de la segunda parte no hará otra aportación que su trabajo personal y no tendrá otras facultades que la operación del vehículo quedando la administración y dirección del mismo a cargo exclusivo de la propietaria, White Star Bus Line Co. Inc.

"FIRMADO por duplicado en San Juan, P. R., a 2 de septiembre de 1925. White Star Bus Line, Inc. (fdo.) A. Valdés, Presidente, Ventura Martínez Díaz."

Es obvio que los *chauffeurs* eran empleados y no socios. Dichos *chauffeurs* no tenían absolutamente que ver con la dirección y manejo del negocio a que se dedicaba la corpo-

ración. No tienen participación alguna en las ganancias netas derivadas del negocio. Estaban sujetos a ser despedidos en cualquier momento y bajo la absoluta dirección y dominio de la corporación en todo tiempo. Se les pagaba una remuneración por su trabajo y por sus servicios al final de cada día o período de trabajo fijado por la compañía, ya fuere de día o de noche, un tanto por ciento de las entradas brutas derivadas de la conducción del vehículo guiado por cada uno de ellos.

Fuera de este factor de remuneración sobre la base de un tanto por ciento, el contrato que ahora tenemos bajo nuestra consideración no tiene prácticamente ninguno de los elementos esenciales de un contrato de sociedad y en sus aspectos más substanciales tiene indicios fehacientes de una intención de crear la relación de patrono y empleado. Según se dijo en el caso de *Colón*, el mero hecho de que se paguen salarios en forma de comisión o de tanto por ciento no es concluyente de la existencia de una sociedad, que es cuestión de intención; y cuando en la forma corriente se llega a tal intención, ésta debe regir.

La sentencia apelada debe ser *confirmada*.

El Juez Asociado Señor Aldrey no intervino.